| | | |
|---|---|---|
| **GLORIA DICKERSON** | | |
| | **Plaintiff,** | No. 19-8344-KM-MAH |
| **v.** | | |
| | | **OPINION** |
| **NEW JERSEY INSTITUTE OF TECHNOLOGY, ANNIE CRAWFORD, STACI MONGELLI, AND LAUREN RUBITZ,** | | |
| | **Defendants.** | |

## KEVIN MCNULTY, U.S.D.J.:

*Pro se* plaintiff Gloria Dickerson filed a complaint asserting that her employer, New Jersey Institute of Technology ("NJIT"), and her co-workers Annie Crawford, Staci Mongelli, and Lauren Rubitz discriminated against her. Ms. Dickerson asserts that defendants failed to promote her, subjected her to unequal terms and conditions of employment, subjected her to a hostile work environment, and harassed and retaliated against her. These acts, she alleged, were impermissibly based on her race, her age, and her exercise of rights under the Family Medical Leave Act. Defendants now move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to plead facts sufficiently setting forth the basis for Ms. Dickerson's claims.

In general, the Title VII, ADEA, and ADA claims, which may only be brought against an employer, are dismissed as against the three individuals. As to the employer, NJIT, the complaint states facts in relation to a possible ADA violation, relating to Ms. Dickerson's exercise of rights under the FMLA. It contains no facts, however, suggesting that her alleged workplace frustrations arose from racial or age discrimination. For the reasons provided below, then, defendants' motion to dismiss is granted in part and denied in part.

## I.    Factual Allegations[1]

The Complaint (full version at DE 5-2, pp. 5–23)[2] consists of pages 1–7 of a form court complaint for employment discrimination. Following page 7 is a handwritten attachment (DE 5-2 p. 12); a copy of Ms. Dickerson's NJ Division on Civil Rights Charge of Discrimination (DE 5-2 pp. 13–14); U.S. Department of Labor Interview Statement (DE 5-2 pp. 15–16) and finding of FMLA violation (DE 5-2 pp. 17–18); and an EEOC dismissal and notice of rights (DE 5-2 pp. 20). The form court complaint for employment discrimination then resumes at page 8. (DE 5-2 pp. 21–22). Given plaintiff's *pro se* status, I will treat these documents collectively as her complaint, and cite them together as "Compl." Because of the inconsistent pagination, I will cite the Complaint using the page numbers from the ECF docket entry.

Ms. Dickerson works as a customer service representative in the human resources department at NJIT. She is an African-American female, she is approximately 72 years old, and she suffers from a permanent chronic respiratory condition. (Compl. at 10). Occasionally, this respiratory condition requires her to request temporary leave under the Family Medical Leave Act ("FMLA"). (*Id.* at 15).

Ms. Dickerson was hired in 2014. (*Id.* at 10). Defendant Annie Crawford, an assistant Vice President at NJIT, is Ms. Dickerson's supervisor. (*Id.* at 11).

---

[1]    As required at this stage, the Court accepts all well-pleaded allegations as true. For ease of reference, docket items will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

DE = docket entry number in this case;

DBr = New Jersey Institute of Technology's moving brief (DE 5);

PBr = Dickerson's opposition brief (DE 14);

Reply = New Jersey Institute of Technology's reply brief (DE 20).

[2]    Ms. Dickerson's complaint as originally scanned onto the docket appears to be incomplete. (*See* DE 1). Defendants, however, filed with their motion to dismiss what appears to be a complete version of Ms. Dickerson's complaint. All citations to the complaint will therefore be to the version attached to defendants' motion to dismiss. (*See* DE 5-2).

Defendant Staci Mongelli is the assistant director of employment and human resources operations. Defendant Lauren Rubitz is the assistant director of organizational development and human resource operations. (*Id.* at 8). Ms. Crawford, Ms. Mongelli, and Ms. Rubitz, who are members of the employment division of NJIT. Ms. Dickerson alleges that they were supposed to include her as a member of the same division. (*Id.* at 12). Ms. Dickerson generally alleges that defendants did not want to work with her. (*Id.*) As a result, defendants are alleged to have "retaliated, discriminated, denied opportunity, created a hostile environment to suppress the positive relationships [she] was developing with Faculty and Staff" and created a "toxic environment." (*Id.*; *see also id.* at 13).

On or about November 23, 2018, Ms. Dickerson filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On the form complaint, she checked boxes indicting that she was asserting discrimination based on race, age, and disability. (*Id.* at 13). In the body of the EEOC complaint, she asserts that for approximately 4 years, from August 31, 2014 through September 20, 2018, she was "subjected to harassment and a hostile work environment by several employees . . . Annie Crawford, Staci Mongelli, and Lauren Rubitz. I have been denied opportunities to grow as an employee within my department by the aforementioned individuals. I have complained to respondent about these actions and nothing was done." (*Id.*). The EEOC complaint asserts more specifically that "[o]n one occasion, Ms. Crawford called me into her office and interrogated me as to how I could be dancing if I had my disability. These comments were harassing and uncalled for." (*Id.*). On November 29, 2019, the EEOC dismissed Ms. Dickerson's complaint and mailed her a notice of rights letter that instructed that she had 90 days to appeal the EEOC's dismissal by filing a lawsuit in federal court. (*Id.* at 20). Ms. Dickerson received this notice on December 10, 2019. (*Id.* at 11).

Around the time that Ms. Dickerson filed her EEOC complaint, she also filed a complaint with the United States Department of Labor's Wage and Hour Division alleging violations of the FMLA. (*Id.* at 15). Ms. Dickerson was

interviewed on December 27, 2018. (*Id.*). She explained in her interview that because of her chronic respiratory condition, she is occasionally granted temporary leave under the FMLA. (*Id.*). She was initially certified for FMLA leave in 2016, and has been recertified three times, most recently on August 14, 2018. (*Id.*). She alleged in her complaint to the Department of Labor that she was harassed as a result of exercising her rights under the FMLA:

> I was harassed due to me using intermittent FMLA. I was invited to a co-worker retirement party which was held on a Saturday evening. During the event I danced as I have done during previous related events. On or around 9/7/2018 Annie Crawford . . . asked me to come to her office. . . . Annie said to me, 'It was brought to my attention that you attended Norma's Retirement Celebration.' She further Asked, 'How can you dance on FMLA?' She repeated the question several times. I felt humiliated by the question from her because I felt she had no right to ask me such a question. I felt her actions were insensitive, unfair, unnecessary, retaliatory, and extremely hurtful.

(*Id.* at 15). The Department of Labor conducted an investigation and determined that Ms. Crawford had discriminated against Ms. Dickerson when she questioned Ms. Dickerson about how she could be on FMLA leave and yet dance at a retirement party. (*Id.*). NJIT agreed that proper recertification procedures would be used moving forward and that if Ms. Crawford had questions about FMLA usage, she should ask for a recertification. (*Id.*).

On March 7, 2019, Ms. Dickerson filed a complaint with this Court alleging violations of: **(1)** Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*) ("Title VII"); **(2)** Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621 to 634) (the "ADEA"); **(3)** Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112 to 12117) (the "ADA"); and **(4)** Whistleblower Protection Act. (Compl. at 9). The discriminatory conduct alleged failure to promote, unequal terms and conditions of employment, retaliation, and harassment. (*Id.* at 10).

On April 24, 2019, defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion asserts that

Ms. Dickerson failed to exhaust administrative remedies before filing her complaint, and that she failed to plead the elements of each cause of action. (DE 5).[3]

## II.  Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief" (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. *See also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

---

[3]      Originally, defendants misread the docket to state that the complaint was filed on March 12, 2019. (It was filed on March 7, but not entered on the docket until March 12, 2019. (DE 1).) Thus, defendants asserted that the complaint failed to allege timely filing within 90 days after receipt of the EEOC right-to-sue letter. From the docket and the later-filed, complete version of the complaint, it is clear that Ms. Dickerson received the EEOC denial notice on December 10, 2018 at the earliest, and filed her complaint in this Court on March 7, 2019, within the 90-day deadline. (DE 20 at 4; DE 5-2 at 11). Defendants have therefore withdrawn their timeliness challenge.

For purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

In considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

### III.    Discussion

#### A. Claims against Crawford, Mongelli, and Rubitz

As a threshold matter, the Title VII, ADEA, and ADA claims will be dismissed as against the individual defendants, Ms. Crawford, Ms. Mongelli, and Ms. Rubitz. In deciding whether individuals are liable (and for other issues as well), courts have generally treated these three statutes interchangeably. *See DeJoy v. Comcast Cable Communications Inc.*, 941 F.Supp. 468, 474 (1996) (D.N.J.1996) ("Courts, including the Third Circuit, routinely use the case law under the three statutes interchangeably." (citing *DiBiase v. SmithKline*

*Beecham Corp.*, 48 F.3d 719, 724 (3d Cir.1995))). And that parallel construction makes sense. All three Acts are aimed at discrimination. In all three Acts, Congress created liability for "employers." *See* 29 U.S.C. § 623(a)(ADEA)("It shall be unlawful for an employer . . ."); 42 U.S.C. § 12111(2)(ADA)(defining "covered entity" which is prohibited from discriminating as "an employer, employment agency, labor organization, or joint labor-management committee"); 42 U.S.C. § 2000e–2(a)(Title VII)("It shall be an unlawful employment practice for an employer. . . .").

The courts of this Circuit have routinely held that coworkers cannot be held liable under Title VII. *Canete v. Barnabas Health Sys.*, No. 12-cv-7222, 2013 WL 5305236, at *3 (D.N.J. Sept. 18, 2013)(citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996)("we are persuaded that Congress did not intend to hold individual employees liable under Title VII."));*Clements v. Hous. Auth.*, 532 F. Supp. 2d 700, 705 n.1 (D.N.J. 2007)("It is well settled that individuals may not be held liable under Title VII."). Count One, the Title VII claim, must be dismissed as against Ms. Crawford, Ms. Mongelli, and Ms. Rubitz because they are not employers but individuals.

The same holds true for Count Two, the ADEA claim. "As a matter of law, the ADEA does not provide for individual liability." *Muhammad v. Sills Cummis & Gross P.C.*, 621 F. App'x 96, 98 (3d Cir. 2015)(citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n. 29 (3d Cir. 2006)).

Likewise, recent Third Circuit precedent makes it clear, if it was not clear before, that an ADA claim against individual defendants is barred: "Title VII and the ADA impose liability only on employers." *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA").

Counts One, Two, and Three of the complaint will be dismissed insofar as they assert claims against defendants Crawford, Mongelli, and Rubitz that

are unavailable as a matter of law. Because amendment would be futile, this dismissal is with prejudice.

### B. Discrimination claims against NJIT

In general, Ms. Dickerson asserts that she was discriminated against because NJIT failed to promote her, subjected her to unequal terms and conditions of employment, retaliated against her, and harassed her. (Compl. at 10). She asserts that these discriminatory practices occurred because of her race, age, and disability. (*Id.* at 11). Ms. Dickerson therefore brings suit against NJIT pursuant to Title VII, the ADEA, and the ADA. (*Id.* at 10).

Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." 42 U.S.C.2000e–2(a)(1). The ADEA forbids an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C.A. § 623(a)(1),(2). The ADA makes it unlawful for an employer to discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a)

Ms. Dickerson's Title VII race discrimination, ADEA age discrimination, and ADA disability discrimination claims are all analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). First, the plaintiff carries the initial burden of establishing a prima facie case. *Id.* "If [the plaintiff] establishes a prima facie case, the State must provide a legitimate, non-discriminatory reason for the adverse employment action." *Shahin v. Delaware,* 424 F. App'x 90, 92–93 (3d Cir.

2011)(applying burden-shifting framework in Title VII cases and citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)). "If the State is able to proffer such a reason, [the plaintiff] must show that it is a pretext for discrimination." *Id.*; *see also Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)(finding that the burden-shifting framework of *McDonnell Douglas* applies to ADA retaliation claims); *Gress v. Temple Univ. Health Sys.*, No. 18-3085, 2019 WL 4511720, at *2 (3d Cir. Sept. 19, 2019)(applying *McDonnell Douglass* burden shifting framework to ADEA claims).

 Step one, the prima facie case, whether under Title VII, the ADEA, or the ADA, has parallel elements:

 **Title VII** – a plaintiff must show:

(1) she belongs to a protected class;

(2) she was qualified for the position;

(3) she was subject to an adverse employment action despite being qualified; and

(4) under circumstances that raise an inference of discriminatory action.

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)(citing *McDonnell Douglas*, 411 U.S. at 802).

 **ADEA** – a plaintiff must show:

(1) she is over forty;

(2) is qualified for the position in question;

(3) suffered from an adverse employment decision; and

(4) that her replacement was sufficiently younger to permit a reasonable inference of age discrimination.

*Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)(citing *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

 **ADA** – a plaintiff must show:

(1) she is a disabled person within the meaning of the ADA;

(2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;

(3) she has suffered an otherwise adverse employment decision; and

(4) the adverse employment decision was the result of discrimination.

*See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir.1998).

As to element (1) (protected class), Ms. Dickerson sufficiently pleads the necessary supporting facts under all three statutes. The complaint alleges that she is a member of a protected class under Title VII because she is African-American (Compl. at 13); a member of a protected class under the ADEA because she was 71 years old at the time of the alleged events (*id.*); and protected under the ADA because she has a disability in the form of a permanent chronic respiratory condition (*id.* at 10).

As to element (2) (plaintiff was qualified for her position at NJIT), Ms. Dickerson also has pleaded facts sufficient to satisfy the liberal standard of review afforded a pro se complaint. The complaint asserts that she was hired to be a customer service representative to restore a positive reputation to the human resource department and that she was developing positive relationships with faculty and staff. (*Id.* at 11–12).

It is in relation to elements (3) and (4) that the real issue arises. I must determine whether the complaint contains factual allegations that establish, under all three statutes, that (3) she was subject to the adverse employment actions — *i.e.*, that defendants failed to promote her, subjected her to unequal terms and conditions of employment, retaliated against her, and harassed her; and (4) these adverse actions occurred under circumstances giving rise to an inference of age, race, or disability based discrimination.

### i. Failure to promote

As an adverse employment action, Mr. Dickerson asserts that NJIT failed to promote her. (Compl. at 10). A failure-to-promote discrimination claim requires that a plaintiff show that:

'(i) that [s]he belongs to a [protected category];

(ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants;

(iii) that, despite [her] qualifications, [s]he was rejected; and

> (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'

*Noel v. The Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010), *as amended* (Oct. 18, 2010) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

As noted above, Ms. Dickerson has established element 1; she belongs to a protected class. The complaint asserts that she was 71 at the time of the alleged discriminatory behavior, she is African American, and she has a disability. However, the complaint stops short of asserting facts that establish the remaining elements of a failure to promote claim.

Turning to element 2, even granting a liberal construction of the complaint, I find its allegations insufficient to establish that that Ms. Dickerson "applied and was qualified for a job for which the employer was seeking applicants." The sum total of the allegations appear to be that: (1) she was denied opportunities to grow (Compl. at 13) and (2) she did not feel a part of the group (*id.* at 12). To her brief, Ms. Dickerson attaches a memorandum outlining instances where (3) she was excluded from meetings, (4) she offered another group, the Employment Group, help, which the Employment group turned down, and (5) "Fatima, then Marisela" were hired.[4]

I am mindful that case law in this district does not require Ms. Dickerson

---

[4] A brief word about allegations (3), (4), and (5): Ms. Dickerson attaches to her brief a memorandum which summarizes a meeting she had with two individuals who appear to have been in HR at the time, Nancy Hark and Vanessa Young. It summarizes Ms. Dickerson's oral complaints thus: "You have offered your assistance to the Employment group, but they have not used you to help them, instead they hired Fatima, then Marisela. You believe it is a concerted effort to keep you from doing anything except working the front desk." (DE 14 at 7). Hark offers to set up a meeting with Holly Stern, acting VP of Human Resources (and now General Counsel) to discuss next steps, including appointment of an independent investigator.

The allegations contained in this memorandum are not found in the form complaint or the documents attached to it. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). This attachment to plaintiff's opposition brief is not part of the complaint and is not properly considered in opposition to a Rule 12(b)(6) motion. Even if considered, however, they would not change the result here. *See* p. 12, *infra*.

to assert that she applied for a formal promotion in order to withstand a motion to dismiss. "Although some courts have held that failure to apply for a promotion is fatal to a failure to promote claim, many courts have overlooked this failure in certain cases, such as when the promotional system did not involve a formal application process and when a plaintiff's attempts to apply for a promotion have been rebuffed." *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 331 (D.N.J. 1995), *on reconsideration in part* (July 3, 1995). None of those mitigating factors are pled here, however.

Ms. Dickerson's assertion that she wanted to attend meetings or that she offered another group assistance are generally supportive of her claim that she is a deserving and dedicated employee. It does not suggest, however, that she actually or impliedly sought or was denied a promotion. In fact, the additional documentation provided by Ms. Dickerson suggests the opposite: that Ms. Dickerson wished to take on new tasks in her current role and to improve her skills so that she might advance and "take these [skills] with [her] to a different employer." (Compl. at 13; DE 14 at 7).

Likewise there are no well-pleaded facts establishing that "despite [her] qualifications, [s]he was rejected" for a promotion, the third element of her claim. Nor are there any well-pleaded facts to support the fourth element: that NJIT sought and hired individuals in the employment group that matched Ms. Dickerson's qualifications.

The memo attached to Ms. Dickerson's brief (DE 14 at 7) relates to her complaint and states that two other individuals, "Fatima" and "Marisela," were hired. The Complaint does not mention these two individuals — a fatal flaw in and of itself. But even accepting that Fatima and Marisela were hired, Ms. Dickerson has failed to allege any facts from which a fact finder could glean these women's qualifications, determine their races, ages, or disability status, or infer that they were similarly situated to Ms. Dickerson.

Accordingly, Ms. Dickerson's failure-to-promote claims pursuant to Title VII, the ADEA, and the ADA are dismissed without prejudice.

### ii. Unequal terms and conditions of employment

Ms. Dickerson claims that she was subjected to unequal terms and conditions of employment. NJIT again asserts that the complaint is devoid of factual allegations that establish each element of her claim. (DBr at 16).

A "prima facie case of employment discrimination is established when the plaintiff demonstrates: (1) that he or she is a member of a protected class; (2) that he or she was qualified for the job; (3) that he or she was negatively affected by the defendant's employment decisions; and (4) that he or she was treated less favorably than employees not within the protected class." *Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of Atl. City*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), *aff'd*, 208 F.3d 206 (3d Cir. 2000)(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law at 15 (3d ed.1996) (citations omitted)).

As noted in Section III.B, *supra*, the complaint adequately pleads elements 1 and 2 (protected class and qualification for job).

As to elements 3 and 4, Ms. Dickerson alleges that she was denied opportunities to grow, that defendants did not want to work with her, that she was subjected to microaggressions, that she was questioned about her FMLA eligibility, and that she was denied access to certain team meetings. (Compl. at 13, 21; *see also* DE 14 at 7).

But even if these allegations satisfied the third element (that Ms. Dickerson was negatively affect by defendant's employment decisions), they would fail to satisfy the fourth (that these employment decisions resulted in her being treated differently than others in her protected age, race, or disability status).

The plaintiff has indicated, by checking boxes on the form complaint, that her alleged mistreatment by defendants was based on her race, age, or disability. She has failed, however, to state facts to support these conclusory assertions. For example, she fails to identify another employee who was of a

different race, younger, or not disabled, who was similarly situated but received better treatment. She has not identified a supervisor's statements or remarks based on racial or ageist stereotypes. These allegations are general; they lack factual specificity or substance.[5] As the complaint does not contain anything more than conclusory allegations, plaintiff has failed to state a claim for unequal terms and conditions of employment under Title VII, the ADEA, or the ADA.

### iii.  Harassment

As to plaintiff's harassment claim, NJIT again asserts that the complaint fails to allege facts that Ms. Dickerson was harassed on the basis of her race, age, or disability. (DBr. 16–17). As to Title VII and the ADEA I agree, but I find that the complaint does state a claim of harassment under the ADA, based on her exercise of FMLA rights.

**Title VII or ADEA harassment claim:** Generally speaking, to advance a prima facie case of harassment under Title VII or the ADEA, a plaintiff must allege that "(1) [s]he suffered intentional discrimination because of [membership in a protected class]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *see also Jaworski v. New Jersey Tpk. Auth.*, No. CIV 05-4485, 2008 WL 4139375, at *8 (D.N.J. July 25, 2008). However, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).

---

[5]     The incident involving questioning about Ms. Dickerson's FMLA status is at least specifically identified. It is not, however, a negative action affecting terms and conditions of employment. It is properly considered, however, as a basis for a claim of harassment or retaliation under the ADA. *See* Sections III.b.iii & iv, *infra*.

14

As to the assertions that NJIT is liable for race based or age based discrimination, I find that the complaint is devoid of relevant facts. The complaint suggests that Ms. Dickerson's coworkers were, at times, uncivil towards her and behaved unwelcomingly. That does not equate to actionable harassment. Nor is there any allegation that connects such behavior to Ms. Dickerson's race or age.

**ADA harassment claim:** However, with respect to the ADA, I do find that the complaint sufficiently states a claim of harassment based on Ms. Dickerson's exercise of her rights under the FMLA. To state a claim of harassment under the ADA, a plaintiff must show that:

(1) she is a qualified individual with a disability under the ADA;

(2) she was subject to unwelcome harassment;

(3) the harassment was based on her disability or a request for an accommodation;

(4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and

(5) that her employer knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999).

The complaint asserts that Ms. Dickerson has been certified with a FMLA disability; thus element 1, disability status, is satisfied.

The complaint further asserts that Ms. Dickerson filed a complaint with the EEOC stating that "Ms. Crawford called me into her office and interrogated me as to how I could be dancing if I had my disability." (Compl. at 13). Ms. Dickerson elaborates on these facts by providing an interview conducted by the Department of Labor, deemed to be part of her complaint. In the interview, Ms. Dickerson asserts that on 9/7/2018, she had a meeting with her boss, Ms. Crawford, and "Sandra Dias the person who handles FMLA for NJIT." (*Id.* at 15). During this meeting, Ms. Crawford allegedly stated that she had heard Ms. Dickerson was dancing at a retirement party and repeatedly asked how Ms.

Dickerson could dance while on FMLA leave. (*Id.*). At this stage, these suffice as to elements 2 and 3. Ms. Dickerson was singled out and interrogated (in somewhat insulting terms) based on the fact that she was validly using FMLA leave. The Department of Labor conducted an investigation and agreed that this conduct was severe enough to amount to a discrimination violation, satisfying element 4. (*Id.* at 17–18).

Finally, element 5—that NJIT knew of the violation and failed to take prompt remedial action—is satisfied. Supervisory personnel were at the meeting, and Ms. Dickerson complained to HR about it. The complaint alleges that multiple other individuals, including the general counsel of NJIT and the VP of human resources, were informed about the issue. (*Id.* at 15–16; 18). The meeting took place on September 7, 2018, but no corrective measures were taken until January 2019, and then only as a result of Ms. Dickerson's having filed a complaint with the Department of Labor. (*Id.* at 19).

The strength of the claim, and any damages that may have been suffered, are issues for a later stage of the case. For now, NJIT's motion to dismiss Count 3, the ADA-based harassment claim, is denied.

### iv. Retaliation

NJIT argues that the retaliation based claims must be dismissed for two reasons. First, retaliation claims brought under Title VII, the ADEA, and the ADA must first be filed with the EEOC before a federal court may take jurisdiction. (DBr. at 13). Ms. Dickerson did not check the box on her EEOC complaint that indicates that she was asserting a retaliation claim; thus, according to NJIT, Ms. Dickerson has not availed herself of her administrative remedy. (*Id.* at 14). In the alternative, NJIT asserts that the complaint fails to state a retaliation claim. (*Id.* at 17).

As to whether this Court has jurisdiction over the retaliation claim, I find that the answer is yes. NJIT cites to *Hicks v. ABT Associates, Inc.*, 572 F.2d 960 (3d Cir. 1978), which is instructive here. (DBr. at 13).

In *Hicks*, plaintiff filed a complaint before the EEOC asserting race discrimination. *Id.* at 962. The EEOC, after a brief investigation, issued a "determination that no reasonable cause existed to believe that Hicks had been the victim of race discrimination." *Id.* at 963. Hicks then filed a complaint in federal district court asserting race discrimination, and also sex discrimination. Defendants moved for summary judgment, asserting that the sex discrimination claim should be dismissed because it had not first been presented to the EEOC. The Third Circuit noted that "[i]n determining the content of the original complaint for purposes of applying this regulation, we keep in mind that charges are most often drafted by one who is not well versed in the art of legal description. Accordingly, the scope of the original charge should be liberally construed." *Id.* at 965 (citation omitted). Once a complaint has been filed with the EEOC, "this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" *Id.* at 966 (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976)). That EEOC complaint spoke in broad terms of "disparate treatment" and there was a "close nexus" between the facts supporting Hicks's claims of race and sex discrimination. Thus the Third Circuit found that a reasonable investigation by the EEOC could have encompassed the sex discrimination claims. *Id.* at 967.

I am guided by the Third Circuit's broad approach. There is a close nexus between Ms. Dickerson's harassment and retaliation claims. They arise from the same set of facts, and would naturally fall within the scope of a reasonable EEOC investigation. Indeed, the EEOC could hardly have investigated one without investigating the other. I find that the Court has jurisdiction over the retaliation claim.

I turn to the factual allegations supporting the retaliation claim. Title VII, the ADEA, and the ADA all prohibit discrimination against any individual for having engaged in protected activity. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 42

U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA). The ADA contains an additional anti-retaliation provision that makes it unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual" exercising rights protected under the Act. 42 U.S.C. § 12203(b). "[T]he scope of this second anti-retaliation provision of the ADA 'arguably sweeps more broadly' than the first." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 570 (3d Cir. 2002)(citing *Mondzelewski v. Pathmark Stores, Inc.* 162 F.3d 778, 789 (3d Cir. 1998)).

> To establish a prima facie case of retaliation, a plaintiff must show
>
> (1) protected employee activity;
>
> (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and
>
> (3) a causal connection between the employee's protected activity and the employer's adverse action.

*Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

With respect to the Title VII and ADEA retaliation claims, the complaint asserts that Ms. Dickerson engaged in protected activity. Most prominently, she filed a complaint with the EEOC alleging race and age discrimination. However, the complaint contains no allegations to support elements 2 or 3. There are no allegations that Ms. Dickerson's exercise of her right to engage in protected activity preceded or led to adverse action by NJIT or any of its employees (element 2) nor are there any factual allegations to support an inference that any arguable adverse action was motivated by Ms. Dickerson's exercise of her rights with respect to racial or age discrimination under Title VII or the ADEA (element 3). Those Title VII and ADEA retaliation claims are therefore dismissed.

Again, it is a different story with respect to Ms. Dickerson's ADA retaliation claim. The complaint sufficiently asserts element 1, that Ms. Dickerson engaged in protected activity, consisting of her exercise of her right to take FMLA leave. (Compl. at 15). As a result, she was subjected to adverse action, satisfying element 2. That is particularly so under the ADA-specific retaliation provision, which extends to acts that coerce, threaten, or intimidate

18

an employee. *See* 42 U.S.C. § 12203(b), quoted *supra*. The complaint alleges that Ms. Dickerson was called to a meeting where she was, effectively, dressed down by her boss for taking FMLA leave since she was able to attend and dance at a retirement party. (Compl. at 15–16). The seriousness or effect of that retaliation is disputed by NJIT, but that factual issue is one to be addressed at a later stage of the litigation.

Finally, with respect to element 3, in the ADA retaliation context, "temporal proximity between the protected activity and [the adverse action] can be itself sufficient to establish a causal link." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (internal quotation marks and alterations omitted). The Third Circuit has held that time periods of two days and ten days are sufficiently suggestive, but a time period of "over two months" was "not unduly suggestive" and was insufficient to support an inference of causal connection. *Id.* at 760–61. Here, the complaint asserts that plaintiff exercised her rights to take FMLA leave in the days surrounding the retirement party and then upon her return to work was questioned about her behavior at that retirement party. At the complaint stage, that is sufficient to suggest a causal connection.

Accordingly, NJIT's motion to dismiss the ADA retaliation claim is denied.

### C. Whistleblower claim against NJIT

Count 4 of the complaint asserts a claim under the "Whistleblower Protect Act." The reference is evidently to the Whistleblower Protection Act, 5 U.S.C. § 2302.

The Third Circuit outlined in *Fleeger v. Principi*, 221 F. App'x 111 (3d Cir. 2007) the requirements for a federal whistleblower claim:

> The WPA protects federal employees against agency reprisal for whistleblowing activities, such as disclosing illegal conduct, gross mismanagement, gross waste of funds, or acts presenting substantial dangers to health and safety. *See* 5 U.S.C. § 2302(b)(8). The Civil Service Reform Act ("CSRA") provides the exclusive remedy

for claims brought pursuant to the WPA. *See, e.g., Richards v. Kiernan*, 461 F.3d 880, 885–86 (7th Cir. 2006) (citing cases).

*Id.* at 115–16. Here, Ms. Dickerson's claim must be dismissed as she is not a federal employee and therefore is not eligible to bring this claim. *See* 5 U.S.C. § 2105(a)(2) (defining employee as an individual "engaged in the performance of a Federal function under authority of law or an Executive act"). Because that deficiency cannot be overcome by amendment, the dismissal of the claim under the Whistleblower Protection Act, 5 U.S.C. § 2302 (assuming that is what was intended) is with prejudice.

## IV. Conclusion

For the reasons provided above, the motion to dismiss (DE 5) is granted in part and denied in part.

With respect to the individual defendants, the motion to dismiss Counts 1 (Title VII), 2 (ADEA) and 3 (ADA) is **GRANTED.** These claims are dismissed as against Ms. Crawford, Ms. Mongelli, and Ms. Rubitz with prejudice, as amendment would be futile.

With respect to defendant NJIT, the motion to dismiss Counts 1 (Title VII), 2 (ADEA) and 3 (ADA) is **GRANTED IN PART AND DENIED IN PART**, as follows:

- The motion to dismiss Counts 1 and 2 is **GRANTED** insofar as plaintiff asserts failure to promote, unequal terms and condition of employment, harassment, and retaliation claims under Title VII and the ADEA. This dismissal is without prejudice.

- The motion to dismiss Count 3 is **GRANTED** in so far as plaintiff asserts failure to promote and unequal terms and condition of employment claims under the ADA. This dismissal is without prejudice.

- The motion to dismiss Count 3 is **DENIED** insofar as plaintiff asserts harassment and retaliation claims under the ADA.

The motion to dismiss Count 4, the Whistleblower Act claim, is **GRANTED** as to all defendants, with prejudice, as amendment would be futile.

The dismissals without prejudice will ripen into dismissals with prejudice unless the plaintiff, within 30 days, files a proposed amended complaint.

An appropriate order follows.

Dated: November 14, 2019

**Kevin McNulty**
**United States District Judge**