UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLORIA D. DICKERSON,** | Civ. No. 19-8344 (KM) (JBC) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEW JERSEY INSTITUTE OF TECHNOLOGY, ANNIE CRAWFORD, STACI MONGELLI, and LAUREN RUBITZ** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is the motion of Defendant New Jersey Institute of Technology ("NJIT") to dismiss the Amended Complaint of *pro se* Plaintiff Gloria Dickerson, which asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§ 12112 to 12117; the Equal Pay Act, 29 U.S.C. § 206(d); and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 *et seq.*

For the reasons provided herein, I will grant Defendant's motion to dismiss the (First) Amended Complaint without prejudice to the submission, within 30 days, of a proposed Second Amended Complaint.

## I. Summary[1]

### a. Factual Background

Dickerson filed the initial Complaint on March 7, 2019, asserting claims of race, age, and disability discrimination under Title VII, the ADA, and the ADEA, against Defendant NJIT and three individual Defendants. (DE 1).

In the Opinion deciding Defendants' first motion (DE 5) to dismiss, I described the facts alleged in the initial Complaint as follows:

> Ms. Dickerson works as a customer service representative in the human resources department at NJIT. She is an African-American female, she is approximately 72 years old, and she suffers from a permanent chronic respiratory condition. (Compl. at 10). Occasionally, this respiratory condition requires her to request temporary leave under the Family Medical Leave Act ("FMLA"). (*Id.* at 15).
>
> Ms. Dickerson was hired in 2014. (*Id.* at 10). Defendant Annie Crawford, an assistant Vice President at NJIT, is Ms. Dickerson's supervisor. (*Id.* at 11). Defendant Staci Mongelli is the assistant director of employment and human resources operations. Defendant Lauren Rubitz is the assistant director of organizational development and human resource operations. (*Id.* at 8). Ms. Crawford, Ms. Mongelli, and Ms. Rubitz, . . . are members of the employment division of NJIT. Ms. Dickerson alleges that they were supposed to include her as a member of the same division. (*Id.* at 12). Ms. Dickerson generally alleges that defendants did not want to work with her. (*Id.*) As a result, defendants are alleged to have "retaliated, discriminated, denied opportunity, created a hostile environment to suppress the positive relationships [she] was developing with Faculty and Staff" and created a "toxic environment." (*Id.*; *see also id.* at 13).
>
> On or about November 23, 2018, Ms. Dickerson filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On the form complaint, she checked boxes indicting that she was asserting discrimination based on race, age, and disability. (*Id.* at 13). In the body of the EEOC complaint, she asserts that for approximately 4 years, from August 31, 2014 through September

---

[1]   Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

20, 2018, she was "subjected to harassment and a hostile work environment by several employees . . . Annie Crawford, Staci Mongelli, and Lauren Rubitz. I have been denied opportunities to grow as an employee within my department by the aforementioned individuals. I have complained to respondent about these actions and nothing was done." (*Id.*). The EEOC complaint asserts more specifically that "[o]n one occasion, Ms. Crawford called me into her office and interrogated me as to how I could be dancing if I had my disability. These comments were harassing and uncalled for." (*Id.*). On November 29, 2019, the EEOC dismissed Ms. Dickerson's complaint and mailed her a notice of rights letter that instructed that she had 90 days to appeal the EEOC's dismissal by filing a lawsuit in federal court. (*Id.* at 20). Ms. Dickerson received this notice on December 10, 2019. (*Id.* at 11).

Around the time that Ms. Dickerson filed her EEOC complaint, she also filed a complaint with the United States Department of Labor's Wage and Hour Division alleging violations of the FMLA. (*Id.* at 15). Ms. Dickerson was interviewed on December 27, 2018. (*Id.*). She explained in her interview that because of her chronic respiratory condition, she is occasionally granted temporary leave under the FMLA. (*Id.*). She was initially certified for FMLA leave in 2016, and has been recertified three times, most recently on August 14, 2018. (*Id.*). She alleged in her complaint to the Department of Labor that she was harassed as a result of exercising her rights under the FMLA:

> I was harassed due to me using intermittent FMLA. I was invited to a co-worker retirement party which was held on a Saturday evening. During the event I danced as I have done during previous related events. On or around 9/7/2018 Annie Crawford . . . asked me to come to her office. . . . Annie said to me, 'It was brought to my attention that you attended Norma's Retirement Celebration.' She further Asked, 'How can you dance on FMLA?' She repeated the question several times. I felt humiliated by the question from her because I felt she had no right to ask me such a question. I felt her actions were insensitive, unfair, unnecessary, retaliatory, and extremely hurtful.

(*Id.* at 15). The Department of Labor conducted an investigation and determined that Ms. Crawford had discriminated against Ms. Dickerson when she questioned Ms. Dickerson about how she could be on FMLA leave and yet dance at a retirement party. (*Id.*). NJIT agreed that proper recertification procedures would be used moving

3

> forward and that if Ms. Crawford had questions about FMLA usage, she should ask for a recertification. (*Id.*).

(DE 21 at 2-4)

Defendants filed a motion to dismiss the initial Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 5) On November 14, 2019, the Court dismissed all of Dickerson's claims except for her claims of harassment and retaliation in violation of the ADA, as asserted against NJIT. (DE 21; DE 22). The Court then granted Dickerson leave to amend her Complaint. (DE 21; DE 22)

Dickerson filed an Amended Complaint (DE 32) on February 14, 2020, alleging the following. On August 3, 2015, Defendant NJIT hired Dickerson as a Customer Service Representative in the Department of Human Resources. (DE 32 at 3-4) At the time of hiring, Dickerson had a Master of Science in Counseling and years of experience in higher education. (DE 32 at 4) As a Customer Service Representative, Dickerson "was charged with the responsibility to significantly improve the customer service delivered to [f]aculty, staff, administrators and external customers." (DE 32 at 4) Dickerson alleges that members of the Department of Human Resources "soon" became hostile towards Dickerson "because she reported a staff member for inappropriate use of the University computer to [s]earch and communicate information about another staff member." (DE 32 at 4) Dickerson "found resistance from that [d]ay to the present against her performance and ability to do her [j]ob." (DE 32 at 4). Dickerson then "reported incidents to the Director of Labor Relations and Employment at NJIT, Department of Labor Wage and Hour, EEOC and eventually filed this lawsuit." (DE 32 at 4).

Dickerson alleges that the discriminatory acts began around October 1, 2016; that as of the filing of the Amended Complaint, Defendant continued to discriminate against her; and that she is being discriminated against on the bases of her race, age, and disability (permanent chronic respiratory condition). (DE 32 at 3) She asserts claims under Title VII, the ADEA, the ADA, the Equal

Pay Act, and the NJLAD for harassment, retaliation, failure to accommodate Plaintiff's disability, and unequal terms and conditions of employment. (DE 32 at 2-3)

Defendant NJIT contends that Dickerson's previously asserted claims, as now amended, should be dismissed because the Amended Complaint "offers no new information," and "contains even fewer facts than in her first pleading." (DE 37-1 at 5) With respect to the newly asserted claims – the claim for failure to accommodate Plaintiff's disability, the claim under the Equal Pay Act, and the claim for discrimination under the NJLAD – Defendant submits that Dickerson provides no supporting factual allegations and that therefore those claims should be dismissed as well. (DE 37-1 at 5-6) Finally, Defendant submits that the ADA claims which survived the initial motion to dismiss should now be dismissed because the "Amended Complaint eliminates the factual allegations in the original Complaint on which this Court allowed those claims to proceed, and therefore, her ADA claims asserted in the Amended Complaint should now be dismissed for failure to state a claim based on the current factual allegations." (DE 37-1 at 5)

## II. Discussion

### a. Legal standard

In considering a motion to dismiss, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we

nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Moreover, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725-26 (E.D. Pa. 2005) (quoting *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004)).

### b. Plaintiff's Reasserted Title VII and ADEA Claims

The initial complaint's Title VII and ADEA claims were dismissed without prejudice. The Amended Complaint has asserted claims under Title VII and the ADEA in amended form.

Plaintiff's Title VII and ADEA claims are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Shahin v. Delaware*, 424 F. App'x 90, 92-93 (3d Cir. 2011) (applying the burden-shifting framework in Title VII cases and citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)); *see also Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 104 (3d Cir. 2019) (applying the burden-shifting framework to ADEA claims). The plaintiff carries the initial burden of establishing a prima facie case for each claim. *Shahin*, 424 F. App'x at 92. If she "establishes a prima facie case, the State must provide a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 92-93. "If the State is able to proffer such a reason, [the plaintiff] must show that it is a pretext for discrimination. *Id.* at 93.

### i. Harassment

To establish a prima facie case of hostile work environment harassment under Title VII or the ADEA, Dickerson must show (1) she "suffered intentional discrimination" because of her membership in a protected class; (2) "the discrimination was pervasive and regular"; (3) "the discrimination detrimentally affected" her; (4) "the discrimination would detrimentally affect a reasonable person" of the same protected class in that position; and (5) "the existence of *respondeat superior* liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012)

I dismissed Dickerson's initial Title VII and ADEA harassment claims. I reasoned that the alleged uncivil behavior of Dickerson's coworkers did not equate to actionable harassment, and that there was no factual allegation connecting the coworkers' behavior to Dickerson's age or race. (DE 21 at 15) In the Amended Complaint, Dickerson adds an allegation that members of the Department of Human Resources "[b]ecame hostile toward Plaintiff because she reported a staff member for inappropriate use of the University computer." (DE 32 at 4) That allegation does not cure the reasons for the initial dismissal of Dickerson's Title VII and ADEA claims. Indeed, the Amended Complaint confirms that this additional hostility did *not* result from her membership in a protected class, but rather stemmed from her having reported misuse of the University's computers. Further, the general and conclusory statement that co-workers became "hostile towards Plaintiff" is insufficiently factual to establish actionable harassment. *See Vance v. Ball State Univ*, 570 U.S. 421, 452 (2013) ("Title VII imposes no 'general civility code.'").

The motion to dismiss Dickerson's renewed harassment claims under Title VII and the ADEA is therefore granted.

### ii. Retaliation

Title VII and the ADEA prohibit discrimination against an employee for having engaged in a protected activity. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 29

U.S.C. § 623(d) (ADEA). To establish a prima facie case of retaliation, Dickerson must show (1) she engaged in protected activity; (2) her "employer took an adverse employment action after or contemporaneous with the employee's protected activity"; and (3) there exists a causal connection between her protected activity and the employer's adverse action. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001).

Under the first prong, "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) Unlike Title VII's substantive discrimination provision, the antiretaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) (internal quotation marks omitted) (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 64 (2006)) Rather, the "antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & S.F.R. Co.*, 548 U.S. at 69). With respect to establishing a causal connection between the plaintiff's protected activity and the employer's adverse action, the Third Circuit's case law focuses "on two main factors": "timing and evidence of ongoing antagonism." *Abramson*, 260 F.3d at 288.

Both the initial Complaint and the Amended Complaint allege that Plaintiff reported incidents of discrimination to the EEOC and to the Department of Labor. (DE 5-2 at 15; DE 32 at 4). In the Amended Complaint, Dickerson adds that she reported the alleged incidents to the Director of Labor Relations and Employment at NJIT. (DE 32 at 4). Such reporting satisfies the first, protected-activity prong. However, I dismissed Dickerson's initial Title VII and ADEA retaliation claims because she failed to allege that her filing of

complaints led to an employer action that would have dissuaded a reasonable worker from filing a discrimination complaint. (DE 21 at 18) Nor did Dickerson allege any facts to support an inference that any arguable adverse action was motivated by Dickerson's exercise of her right to file a complaint. (DE 21 at 18)

The Amended Complaint fails to cure those defects. Dickerson did not allege any adverse actions by Defendant, her employer, in the Amended Complaint. Instead, the Amended Complaint alleges that coworkers became "hostile" towards Dickerson after Dickerson reported a coworker's misuse of the University's computer. (DE 32 at 4) Even if such vague allegation of "hostility" by coworkers is sufficient to survive a motion to dismiss, there is no casual connection between Plaintiff's protected activity – filing a discrimination complaint – and that hostility.

In her opposition brief, Dickerson attempts to remedy that deficiency. She submits that she (1) was "paid less money than others [with] lesser experience"; (2) was "excluded from staff meetings and trainings"; (3) "denied promotions"; (4) "treated differently than other employees"; (5) was "offended by colleagues who made references to faculty/staff who should retire due to age"; and (6) was terminated as of July 7, 2020 – after the filing of the Amended Complaint – due to her medical conditions that arose during the COVID-19 pandemic. (DE 45 at 5) Dickerson also submitted that she is unable to return to work, but the request to extend her medical leave was denied. (DE 45 at 5)

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 383 (3d Cir. 2016). Thus, the Court cannot properly consider the allegations belatedly raised in Dickerson's opposition papers. To guide this *pro se* litigant in the event she seeks to file a further amended pleading, I will point out that even if

10

those factual allegations were properly before the Court, what remains lacking is any allegation from which to draw an inference that the alleged adverse actions occurred as a *result* of Dickerson's engagement in protected activity. Dickerson filed her charge of discrimination with the EEOC on November 23, 2018 (DE 32 at 3) and Dickerson was interviewed by the Department of Labor on December 27, 2018 (DE 5-2 at 15). Dickerson does not allege that the adverse actions occurred *because* she filed complaints of harassment. Nor has she alleged the dates of the alleged adverse actions, to support a theory based on suspicious timing, or "temporal proximity." To be clear, in the context of a retaliation claim, Plaintiff need not necessarily allege an adverse employment action, *i.e.,* one that alters the terms and conditions of employment; an action that "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'" will suffice. *See Thompson,* 562 U.S. at 174 (quoting *Burlington N. & S.F.R. Co.,* 548 U.S. at 69). But some adverse action must be identified, and facts supporting a causal connection between Plaintiff's engagement in a protected activity and the negative employer action must be pled.

The motion to dismiss the retaliation claims under Title VII and the ADEA is therefore granted.

### iii. Unequal Terms and Conditions

To establish a claim for unequal terms and conditions in employment, or disparate treatment, Dickerson must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was negatively affected by Defendant's employment decisions; and (4) was treated less favorably than employees not within her protected class. *Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of Atl. City*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), *aff'd* 208 F.3d 206 (2d Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993)).

I dismissed Dickerson's initial Title VII and ADEA claims for unequal terms and conditions in employment because the Complaint failed to establish

11

that she was being treated differently from others based on her protected age, race, or disability status. (DE 21 at 13) The Amended Complaint contains the same fatal flaws.

First, the Amended Complaint fails to specify negative employment decisions. Second, it fails to allege facts suggesting that Dickerson was treated less favorably when compared to others not within her protected class. Even if the Court could consider the allegations in Dickerson's opposition brief, these would not establish the relevant comparison between Dickerson's treatment and the treatment of others outside of her age, race, or disability class. For example, Dickerson submits that "Staci Mongelli, Lauren Rubitz, and Marisela Cotrina received promotions" but Plaintiff "was never offered a promotion or counseled as to how she could receive a promotion." (DE 45 at 3) However, Dickerson has not alleged that Mongelli, Rubitz, and Cotrina were similarly qualified for promotions, or that they are outside of Dickerson's asserted protected classes.

In her opposition brief, Dickerson asserts generally that she was paid less than others with less experience. (DE 45 at 5). However, Dickerson does not identify those individuals or allege that they are otherwise similarly situated to herself. Also in her opposition brief, Plaintiff discusses why she believes she would be treated unfairly in settlement negotiations and attaches examples of African American employees who were allegedly awarded less in settlement payments than non-African-American employees, including "one of Annie Crawford, Staci Mongelli, and Laruen Rubitz's longtime friends." (DE 45 at 4-5) Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). An exception to that rule "is that a 'document *integral to or explicitly relied* upon in the complaint" may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (alteration in original) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.2d 1194, 1220 (1st Cir. 1996)). Here, the settlements discussed in and

12

attached to the opposition papers were not mentioned, let alone relied upon, in the Amended Complaint. Therefore, they may not be considered. *See id.*

The motion to dismiss Plaintiff's Title VII and ADEA claims for unequal terms and conditions of employment is therefore granted.

### c. Plaintiff's Reasserted ADA Claims and New ADA claim
#### 1. Reasserted ADA Claims

The Amended Complaint reasserts the initial ADA harassment and retaliation claims. (DE 32 at 2-3) These, too, are subject to the *McDonnell Douglas* burden-shifting framework of analysis. *See, e.g., Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). To establish a prima facie claim of harassment under the ADA, Dickerson must demonstrate that: (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that her employer knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999)

I denied Defendant's prior motion to dismiss with respect to Dickerson's initial ADA harassment claim because the complaint alleged the following: (1) Dickerson has been certified with an FMLA disability; (2) Dickerson was called into Ms. Crawford's office to explain how she could dance if she had a disability; (3) the Department of Labor investigated the incident and found the conduct to be severe enough to amount to a discrimination violation; and (4) NJIT knew of the violation and failed to take prompt remedial action. (DE 21 at 15-16) None of those allegations appear in the Amended Complaint. Generally, "an amended pleading—like the amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs. LLC, v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013; 6 Charles Alan

13

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2010)). Therefore, the ADA harassment claim alleged in the Amended Complaint must be dismissed. It appears that the deficiency, however, may be repaired. Plaintiff may, if appropriate, reassert her claims, with the earlier supporting factual allegations, via a Second Amended Complaint.

The same applies to Plaintiff's reasserted ADA retaliation claim. To establish a prima face case, Dickerson must demonstrate that (1) she engaged in protected activity; (2) she suffered adverse action by the employer either after or contemporaneous with her protected activity; and (3) there exists a causal connection between the employee's protected activity and the employer's action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). I upheld the initial ADA retaliation claim because the Complaint alleged the following: (1) Dickerson engaged in protected activity by exercising her right to take FMLA leave; (2) Dickerson suffered adverse action when she "was called to a meeting where she was, effectively, dressed down by her boss for taking FMLA leave since she was able to attend and dance at a retirement party"; and (3) Dickerson "exercised her right to take FMLA leave in the days surrounding the retirement party and then upon her return to work was questioned about her behavior at that retirement party." (DE 21 at 18-19) Again, none of those factual allegations are reasserted in the Amended Complaint. For the reasons stated above, the ADA retaliation claim alleged in the Amended Complaint must be dismissed, but Dickerson may, if she wishes, reassert that claim with the appropriate factual support, via a Second Amended Complaint.

### 2. New ADA Claim of Failure to Accommodate

In the Amended Complaint, Dickerson asserts for the first time an ADA claim of failure to accommodate her disability. (DE 32 at 3 (listing "Failure to accommodate my disability" as part of "[t]he discriminatory conduct of which Plaintiff complains.")) For Dickerson to establish a failure-to-accommodate claim, she must demonstrate that (1) Defendant is a covered entity; (2) she "is a disabled person within the meaning of the ADA;" (2) she "is otherwise qualified to perform the essential functions of the job, with or without reasonable

14

accommodations by the employer;" and (3) she "has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] in this contest include[s] refusing to make reasonable accommodations for [her] disabilities." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186087 (3d Cir. 2019) (alterations in original) (internal quotation marks omitted) (quoting *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). Dickerson has failed to allege any facts relating to a request for an accommodation, or any facts regarding whether she could perform her duties with or without a reasonable accommodation. Therefore, this component of her ADA claim must be dismissed as well.

### d. Newly Asserted Claim under the Equal Pay Act

The Amended Complaint asserts the federal Equal Pay Act as a basis for this Court's jurisdiction. (DE 32 at 2-3) To establish a prima facie case under the Equal Pay Act, Dickerson must demonstrate "that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). The Amended Complaint contains no allegations referring to Plaintiff's pay or the pay of a similarly-situated employee of the opposite sex.

The motion to dismiss the newly asserted claim under the Equal Pay Act is therefore granted.

### e. Plaintiff's Newly Asserted NJLAD Claim

Under the "Basis for Jurisdiction" section of the Amended Complaint, Plaintiff lists the NJLAD as "Relevant State Law." (DE 32 at 3) The general structure of a prima facie NJLAD claim requires Dickerson to prove that: (1)she is a member of a protected class; (2) she was qualified for the job; (3) she was negatively affected by Defendant's employment decisions; and (4) she was treated less favorably than employees not within the protected class. *Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 952 (N.J. Super. Ct. App. Div. 2004) (citing *Murphy*, 32 F. Supp. 2d at 763)). The Amended Complaint is devoid of

15

any facts alleging adverse employment actions or facts relating to less favorable treatment than similarly-situated employees outside of Plaintiff's protected classes. Thus, for the same reasons as discussed in the context of Plaintiff's Title VII and ADEA claims, *see supra* II. a, the motion to dismiss Plaintiff's NJLAD claim is granted.

### III.   Conclusion

For the reasons provided above, I will grant Defendant's motion (DE 37) to dismiss the Amended Complaint without prejudice to the submission, within 30 days, of a proposed Second Amended Complaint.

An appropriate order follows.

Dated: December 2, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**