UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLORIA D. DICKERSON,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NEW JERSEY INSTITUTE OF TECHNOLOGY,** <br> **ANNIE CRAWFORD,** <br> **STACI MONGELLI, and** <br> **LAUREN RUBITZ** <br><br> **Defendants.** | Civ. No. 19-8344 (KM) (JBC) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Gloria Dickerson, proceeding *pro se,* sues her former employer, New Jersey Institute of Technology ("NJIT"), and her former co-workers Annie Crawford, Staci Mongelli, and Lauren Rubitz for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42. U.S.C. §§ 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 to 12117, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 *et seq.* Pending before the Court is Dickerson's motion to amend her complaint. (DE 50.) For the following reasons, the motion to amend is **GRANTED** in part and **DENIED** in part.

1

I.  **Summary**[1]

   a. **Factual Background**

The Court presumes a familiarity with the nature and history of this litigation. I focus on the facts most relevant to Dickerson's pending motion to amend.

Dickerson filed the initial Complaint on March 7, 2019, asserting claims of race, age, and disability discrimination under Title VII, the ADA, and the ADEA, against NJIT and the three individual defendants. (DE 1.)

On April 24, 2019, Defendants filed a motion to dismiss the initial Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 5.) On November 14, 2019, the Court dismissed all of Dickerson's claims except for her claims of harassment and retaliation in violation of the ADA, as asserted against NJIT. (DE 21; DE 22.) In doing so, the Court granted Dickerson leave to amend her Complaint. (DE 21; DE 22.)

Dickerson filed an Amended Complaint (DE 32), on February 14, 2020, asserting claims under Title VII, the ADEA, the ADA, the Equal Pay Act, and the NJLAD for harassment, retaliation, failure to accommodate her disability, and unequal terms and conditions of employment. (DE 32 at 2-3.)

On March 30, 2020, Defendants filed a motion to dismiss the (First) Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 37.) The Court, on December 2, 2020, dismissed all of Dickerson's claims as asserted against NJIT. (DE 48; DE 49.) That order of dismissal was "entered

---

[1]  Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

   "DE" = Docket entry number in this case.

   "Compl." = Dickerson's initial Complaint (DE 1)

   "Am. Compl." = Dickerson's First Amended Complaint (DE 32)

   "2AC" = Dickerson's Proposed Second Amended Complaint (DE 50)

without prejudice to the filing, within 30 days, of a proposed Second Amended Complaint, which" would be deemed as Dickerson's motion to amend. (DE 49.)

Dickerson now seeks leave to file a proposed Second Amended Complaint ("2AC"). The 2AC, filed on January 4, 2021, asserts claims of race, age, and disability discrimination under Title VII, the ADA, and NJLAD, against Defendant NJIT and the three individual defendants.[2] On January 19, 2021, the Defendants filed their opposition to Dickerson's motion to amend. (DE 51.)[3]

## II. Discussion

### a. Legal standard

Generally, motions to amend are governed by Federal Rule of Civil Procedure 15(a), which allows amendments either as a matter of right within a certain time limit or thereafter "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, courts "have shown a strong liberality … in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419, 425 (3d. Cir. 1981) (quoting 3 J. Moore,

---

[2] The 2AC was thus filed a few days after the expiration of the 30-day deadline set by the court. In light of the virtual certainty that the Court would have granted such a brief extension and the plaintiff's *pro se* status, I will not treat the filing as untimely or require any additional threshold showing of good cause. *Wise v. Hickman*, 2020 WL 6375788 at *4 (D.N.J. Oct. 30, 2020) ("Where the Court's established deadline to amend pleadings passes, a party seeking to amend after that date must first satisfy the good cause standard of Fed. R. Civ. P. 16(b)(4).").

[3] On December 29, 2021, Dickerson sent a letter to the Court requesting an update, informing the Court of the Department of Labor's finding of discrimination with respect to Dickerson exercising her FMLA leave, and requesting that "the U.S. Department of Justice, Civil Rights Division … investigate the disparate racial treatment of African American employees at the New Jersey Institute of Technology— past and present." DE 52. Defendants responded to this letter on January 6, 2022, characterizing Dickerson's allegations as "baseless," "unsubstantiated," and "libelous," and an improper attempt to "bolster her proposed amended pleading." DE 53.

The Court has construed Dickerson's 2AC very liberally, based on the allegations contained therein. Statements in a letter or brief will not save a complaint defective on its face. *See Pennsylvania ex. Rel Zimmerman v. PepsiCo, Inc.*, 836 F,2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

3

Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)). On a motion to amend, the court will consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and (5) futility of the amendment." *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Futility" means that the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.3d 858, 864 (3d Cir. 1984). The standards governing a rule 12(b)(6) motion are well known, have been stated in the Court's prior opinions, and therefore need not be stated in detail here. In brief, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 426 U.S. 232, 236 (1974)).

Otherwise, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotation and citation omitted). Therefore "delay," for example, entails more than the mere passage of time; to warrant denial of leave to amend, it must be "undue" or prejudicial. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

### b. Analysis

Defendants do not rely on the Rule 15 factors of delay or prejudice, but argue that the 2AC should be rejected as futile, because it could not withstand a motion to dismiss. (DE 51.) As noted above, futility "means that the

4

complaint, as amended would fail to state a claim upon which relief could be granted." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011) (*quoting Great Western Mining & Mineral Co.*, 615 F.3d at 175). For present purposes, then, the motion is indistinguishable from one under Rule 12(b)(6).

### i. ADA Claims

The 2AC asserts that Dickerson was discriminated against because the Defendants harassed her, retaliated against her, failed to accommodate her disability, and wrongfully discharged her because of her disability.[4] As expressed in my previous opinions, ADA claims are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g., Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). Dickerson therefore carries the initial burden of establishing a prima facie case for each claim. *See id.* (citing *Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999)). If Dickerson establishes a prima facie case, Defendants must articulate a "legitimate, non-discriminatory reason" for the adverse employment action. *Id.* If Defendants can carry this burden, Dickerson must show that it is "a pretext for discrimination." *Id.*

#### 1. Harassment

To establish a prima facie claim of harassment under the ADA, Dickerson must demonstrate that: (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; and (4) NJIT knew or should have known of the harassment but failed to take prompt remedial action. *Vanhook v. Cooper Health Sys.*, No. CV 19-14864,

---

[4] While the 2AC explicitly asserts ADA claims for harassment and retaliation in the section heading, upon reviewing the pleading it appears that Dickerson is also asserting failure to accommodate and wrongful discharge claims. Defendants read the complaint similarly, addressing all four claims in their opposition brief. For purposes of resolving this motion, I will analyze the sufficiency of all four claims but would instruct Dickerson to make it explicitly clear (*e.g.*, through the usage of section and number headings) in any future pleading what causes of action she wishes to assert.

5

2021 WL 2186989, at *8 (D.N.J. May 28, 2021) (citing *Walton v. Mental Health Ass'n of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999)).

In my opinion dismissing the Amended Complaint, I explained that Dickerson's harassment claim in the *initial* Complaint was not dismissed because that pleading alleged that: (1) Dickerson has been certified with an FMLA disability; (2) Dickerson was called into Ms. Crawford's office to explain how she could dance if she had a disability; (3) the Department of Labor investigated the incident and found the conduct to be severe enough to amount to a discrimination violation; and (4) NJIT knew of the violation and failed to take prompt remedial action. (DE 48 at 13 (citing DE 21 at 15-16.)) In the *Amended Complaint*, however, those factual allegations were missing, and I dismissed the harassment claim—although I expressed that Dickerson "may, if appropriate, reassert her claims, with the earlier supporting factual allegations, via a Second Amended Complaint." (DE 48 at 14.)

The 2AC restores the earlier factual allegations from the initial Complaint that I found sufficient to state a harassment claim. Dickerson alleges that (1) she was on intermittent FMLA leave for a "permanent chronic respiratory condition"; (2) Crawford called Dickerson to her office around September 7, 2018 and repeatedly "asked her how she could dance on FMLA"; (3) the Department of Labor determined that Crawford's conduct amounted to a discrimination violation; and (4) NJIT knew of the harassment and failed to take prompt remedial action. (2AC at 2-3, 17-18.)

Accepting these allegations as true, I am persuaded that Dickerson's proposed ADA harassment claim against NJIT is not futile.

### 2. Retaliation

To state a prima facie case of retaliation under the ADA, Dickerson must demonstrate that (1) she engaged in protected activity; (2) she suffered adverse action by the employer either after or contemporaneous with her protected activity; and (3) there exists a causal connection between the employee's

protected activity and the employer's action. *Krouse v. AM. Sterilizer Co*, 126 F.3d 494, 500 (3d Cir. 1997).

I did not dismiss Dickerson's retaliation claim in the initial Complaint, because she alleged that (1) she engaged in protected activity by exercising her right to take FMLA leave; (2) Dickerson suffered adverse action when she "was called to a meeting where she was, effectively dressed down by her boss for taking FMLA leave since she was able to attend and dance at a retirement party"; and (3) Dickerson "exercised her right to take FMLA leave in the days surrounding the retirement party and then upon her return to work was questioned about her behavior at that retirement party." (DE 48 at 13 (citing DE 21 at 18-19.)) Those factual allegations were missing from the Amended Complaint, and I consequently dismissed the retaliation claim against NJIT without prejudice.

The 2AC restores the factual allegations from the initial complaint, alleging that (1) Dickerson "was on intermittent FMLA" leave; (2) Ms. Crawford repeatedly asked Dickerson how "she could dance on FMLA" based on her having attended a retirement party in non-working hours; and (3) after exercising her right to take FMLA leave around the time of the retirement party, upon her return to work she was challenged about her behavior at the party.

Consequently, the Court finds that Dickerson's retaliation claim is not futile.

### 3. Failure to Accommodate

To state a prima facie case of failure to accommodate under the ADA, Dickerson must demonstrate that (1) NJIT is a covered entity; (2) she "is a disabled person within the meaning of the ADA;" (3) she "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;" and (4) she "has suffered an otherwise adverse employment decision as a result of discrimination … [which] in this contest include[s] refusing to make reasonable accommodations for [her] disabilities." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2019) (alterations in original; internal quotation marks omitted) (quoting

7

*Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)).

Dickerson's failure-to-accommodate claim is futile. (DE 51 at 12-13.) The 2AC alleges that when the "Painters and Construction Crews worked on the floor where the Department of Human Resources is located," Dickerson informed Crawford "that the paint fumes and construction dust and chemicals used were detrimental to her health." (2AC at 3-4.) In response, Crawford told Dickerson "to close the door and use the restrooms on the lower floors." (*Id.*)

Setting aside whether that was a sufficient accommodation, the 2AC still fails to allege that (1) NJIT is a covered entity or (2) that Dickerson is otherwise qualified to perform her duties with or without a reasonable accommodation. Accordingly, I find that Dickerson's failure-to-accommodate claim under the ADA is futile.

### 4. Discriminatory Discharge

To establish a prima facie case of discriminatory discharge under the ADA, Dickerson must show that (1) she has a disability or is perceived by the employer to be disabled; (2) that she was qualified for the position from which she was discharged; and (3) she has suffered an adverse employment action because of that disability." *Hoskins v. Valcor Eng'g*, No. CV 14-6536, 2017 WL 1023353, at *5 (D.N.J. Mar. 16, 2017)

The 2AC alleges that "Defendants retaliated against Plaintiff by wrongfully terminat[ing] [her] because of her disability during the Coronavirus Pandemic." (2AC at 4.) Such an allegation is conclusory; because it fails to state supporting facts, it is insufficient to state a claim for discriminatory discharge. Moreover, Dickerson fails to provide any allegations that would support the inference that she was qualified for the specific position from which she was discharged. Therefore, I find that Dickerson's discriminatory discharge claim is futile.

### 5. Individual Liability

Dickerson also appears to assert an individual failure-to-accommodate claim against Crawford, along with aiding-and-abetting harassment and retaliation claims against Mongelli and Rubitz.

In my opinion granting partial dismissal of the initial Complaint, I stated that under Third Circuit precedent, ADA and Title VII claims against individual defendants are barred. (DE 21 at 7 (citing *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017) ("Title VII and the ADA impose liability only on employers."); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA.") Thus, I dismissed with prejudice any individual Title VII, ADEA, and ADA claims against Crawford, Mongelli, and Rubitz. Because these claims have already been dismissed with prejudice, I find that Dickerson's individual claims against Crawford, Mongelli, and Rubitz were, and remain, futile.[5]

### ii. Title VII Claims

Dickerson also asserts claims for unequal terms and conditions, harassment, retaliation, and discriminatory discharge under Title VII.[6] Title VII claims are similarly analyzed under the *McDonnell Douglas* burden-shifting framework. *DeSantis v. New Jersey Transit*, 756 F. App'x 197, 202 (3d Cir. 2019) (citation omitted). *Shahin v. Delaware*, 424 F. App'x 90, 92-93 (3d Cir. 2011) (applying the burden-shifting framework in Title VII cases).

---

[5] Although individuals cannot be held liable under the ADA, they may be liable under the NJLAD for "aiding and abetting" discrimination. *See Desantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 589-90 (D.N.J. 2015).

[6] For Dickerson's Title VII claims, she generally asserts claims for racial discrimination, harassment, and age discrimination. Upon reviewing the pleading, however, I perceive that Dickerson also appears to assert causes of action resembling retaliation, unequal terms and conditions, and discriminatory discharge. Because of Dickerson's *pro se* status, I will assume for purposes of this motion to amend that she intends to assert these claims.

9

### 1. Unequal Terms and Conditions

To establish a prima facie claim of unequal terms and conditions in employment, or disparate treatment, Dickerson must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was negatively affected by Defendant's employment decisions; and (4) was treated less favorably than employees not within her protected class. *Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of Atl. City*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), *aff'd* 208 F.3d 206 (2d Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

The Third Circuit has expressed that the "central focus of the prima facie [Title VII] case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798. For disparate treatment claims, "[t]he evidence most often used to establish this" is whether the plaintiff has demonstrated that "[she] was treated less favorably than similarly situated employees who are not in plaintiff's protected class." *Verdu v. Trustees of Princeton Univ.*, No. CV 19-12484 (FLW), 2020 WL 1502849, at *9 (D.N.J. Mar. 30, 2020) (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008); *see also Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015) ("An inference of discrimination may arise if similarly situated employees of a different race received more lenient treatment than that afforded plaintiff.").

Dickerson's disparate treatment claim is futile because the 2AC fails to sufficiently allege facts that could support an inference that she was treated differently from similarly situated employees not in her protected class. The 2AC generally alleges that (1) "[n]o African American, Hispanic, or other ethnic minority has been permitted to participate in the closed door, private Employment Team Meetings" and (2) "only younger, Caucasian women were permitted to attend the Employment Team Meeting." (2AC at 5-6.)

10

While Dickerson "is not required to show that [s]he is identical to [her alleged] comparator," she is still required to establish "substantial similarity." *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654-55 (3d Cir. 2009) (stating that "[t]o make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that he and the employee are similarly situated in all relevant respects") (citations omitted). The claim is one of discrimination, and requires some fact suggesting that the decision maker acted out of some racial or similar motive; it is not enough to allege that those who attended and did not attend the meeting were members of different groups, or that the employer acted unfairly. Because Dickerson has not alleged that she is similar *in any respect* to the employees who were permitted to attend the at-issue meetings, her unequal terms and conditions claim is futile.

### 2. Harassment

To state a prima facie case of retaliation under the ADA, Dickerson must demonstrate that (1) she engaged in protected activity; (2) she suffered adverse action by the employer either after or contemporaneous with her protected activity; and (3) there exists a causal connection between the employee's protected activity and the employer's action. *Krouse v. AM. Sterilizer Co*, 126 F.3d 494, 500 (3d Cir. 1997).

To establish a prima facie case of hostile work environment harassment under Title VII, Dickerson must show (1) she "suffered intentional discrimination" because of her membership in a protected class"; (2) "the discrimination was pervasive and regular"; (3) "the discrimination detrimentally affected" her; (4) "the discrimination would detrimentally affect a reasonable person" of the same protected class in that position; and (5) "the existence of *respondeat superior* liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Ulrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012).

11

Defendants argue that Dickerson has not alleged facts in the 2AC to support her Title VII harassment claim, and the Court agrees. The 2AC is bereft of factual allegations that would support an inference of intentional discrimination *based on Dickerson's membership in a protected class*, as opposed to an employee grievance or complaint of unfairness. Further, the 2AC does not allege that Dickerson's treatment "would detrimentally affect a reasonable person" in Dickerson's protected class in her position at NJIT. Therefore, I find that Dickerson's Title VII harassment claim is futile.

### 3. Retaliation

Title VII prohibits discrimination against an employee for having engaged in a protected activity. *See* 42 U.S.C. § 2000e-3(a) (Title VII). To establish a prima facie case of retaliation, Dickerson must show (1) she engaged in protected activity; (2) her "employer took an adverse employment action after or contemporaneous with the employee's protected activity"; and (3) there exists a causal connection between her protected activity and the employer's adverse action. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001).

Under the first element, "protected activity" includes both "an employee's filing of formal charges of discrimination against an employer … [and] informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006), Title VII's antiretaliation provision prohibits "all employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) (internal quotation marks omitted) (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 69 (2006). With regard to Dickerson establishing a causal connection between her protected activity and NJIT's adverse action, Third Circuit case law focuses "on two main

factors": "timing and evidence of ongoing antagonism." *Abramson*, 260 F.3d at 288.

I will assume *arguendo* that the protected activity consisted of (1) Dickerson questioning Crawford about perceived discriminatory practices or (2) Dickerson opting to meet with Crawford concerning "sensitive issues" in the presence of the Associate Director of Labor & Employee Relations. Dickerson's retaliation claim is nonetheless futile, because the 2AC fails to adequately plead the second and third elements. The 2AC does not allege any facts concerning the temporal proximity of her protected activity and her July 7, 2020 termination; nor does it allege any facts suggesting that Dickerson's termination was causally related to that protected activity.

Accordingly, I find that Dickerson's retaliation claim under Title VII is futile.

### 4. Discriminatory Discharge

Finally, the 2AC appears to assert a claim of discriminatory discharge under Title VII, in connection with her July 7, 2020 employment termination "during the Coronavirus Pandemic on July 7, 2020." (2AC at 6-7.) In order to state a prima facie case for discriminatory discharge under Title VII, Dickerson must allege: (1) that she is a member of a protected class: (2) that she is qualified for the position; (3) that she was fired from that position; and (4) that the circumstances of the case give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class. *Omogbehin v. Dimensions Int'l, Inc.*, No. CIV 08-3939NLHKMW, 2009 WL 2222927, at *4 (D.N.J. July 22, 2009) (citing *Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999)).

The 2AC is bereft of allegations supporting an inference that Dickerson's termination, whether or not justified, was attributable to unlawful discrimination. The only supporting allegation Dickerson provides is that "[y]ounger, non-protected class employees were given options to remain employed, offered temporary furloughs, and related." Such a conclusory

allegation is not sufficient to state a factual claim for discriminatory discharge. Accordingly, I find that Dickerson's discriminatory discharge claim under Title VII is futile.

### 5. Individual Liability

As established earlier in this opinion, individuals cannot be held liable under Title VII. *Canate v. Barnabas Health Sys.*, No. 12-cv-7222, 2013 WL 5305236, at *3 (D.N.J. Sept. 18, 2013). Therefore, to the extent Dickerson asserts Title VII claims against Crawford, Mongelli, and Rubitz, those claims are similarly futile.

### iii. NJLAD Claims

Dickerson brings two sets of claims under the NJLAD. First, the 2AC brings "identical [NJLAD] claims" to those asserted under the ADA. Second, the 2AC asserts under NJLAD that her July 7, 2020 termination was discriminatory, a claim which I earlier found to be futile under Title VII.

### 1. Claims Against NJIT

NJLAD claims are analyzed under the *McDonnell Douglas* burden-shifting framework used for federal discrimination statutes. *DeSantis v. New Jersey Transit*, 756 F. App'x 197, 202 (3d Cir. 2019) (citation omitted). NJLAD claims are governed by the same standards governing parallel claims under the ADA and Title VII. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (stating that with regard to claims brought under the ADA, courts "look to Title VII case law to … inform [their] analysis" and that "New Jersey law generally tracks the relevant federal statutes[.]"); *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010) ("NJLAD claims generally are governed by the same standards" as the ADA.); *see also Pratt v. Ann Klein Forensic Ctr.*, No. CV 15-5779, 2019 WL 4509288, at *6 (D.N.J. Sept. 18, 2019) ("[D]iscrimination claims under the NJLAD track the same analysis as those under the ADA.").

Given these standards and the similarity between the NJLAD and their federal analogues, I largely track my earlier analysis and find that (1) the NJLAD claims for harassment and retaliation regarding Dickerson exercising

her rights under the FMLA (also asserted under the ADA) are not futile; (2) Dickerson's NJLAD failure to accommodate claim (also asserted under the ADA) is futile; and (3) that Dickerson's unequal terms and conditions and discriminatory discharge (also asserted under Title VII) claims are futile.

### 2. Individual Liability

Unlike federal law, the NJLAD does impose individual liability, albeit through an "aiding and abetting" theory of liability. NJLAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this act." N.J. Stat. Ann. § 10:5-12(e). Further, New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but— counterintuitively—that person's own conduct. That principle furnishes an alternative route to personal liability for a NJLAD violation. *See Cicchetti v. Morris Cnty Sheriff's Off.*, 194 N.J. 563 (N.J. 2008).

To hold an employee liable as an aider and abettor, Dickerson must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of defendant's role as part of an overall illegal or tortious activity at the time that he or she provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Cicchetti*, 947 A.2d at 645 (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

The 2AC seeks to hold (1) Crawford, Mongelli, and Rubitz individually liable for Dickerson's retaliation and harassment claims stemming from her taking FMLA leave and attending a colleague's retirement dinner; (2) Crawford individually liable for her failure to provide a reasonable accommodation to Dickerson; and (3) Crawford individually liable for Dickerson's retaliation and harassment claims in connection with her exclusion from Employment Team meetings.

With respect to Dickerson's exercising her right to take FMLA leave, I have already found that she has sufficiently alleged harassment and retaliation claims against NJIT. I now find that she has adequately alleged that Crawford

aided and abetted those harassment and retaliation violations. The 2AC alleges that Crawford is the primary wrongdoer, and Dickerson focuses almost all of her factual allegations on Crawford's conduct, which she describes in the complaint. The complaint also refers to a Department of Labor investigation, which similarly focused on Crawford's September 7, 2018 conversation with Dickerson and came to the conclusion, after conversations with both Dickerson and Crawford, that a discrimination violation had occurred. 2AC at 19-20. I find a sufficient basis for an inference that Crawford played a role in Dickerson's alleged discriminatory treatment and that therefore Dickerson's aiding and abetting claim is not futile as to Crawford.

On the other hand, the aiding and abetting claims against Mongelli and Rubitz are futile. The 2AC alleges only that "Staci Mongelli and Lauren Rubitz aided and abetted the discrimination, harassment, and retaliation toward Plaintiff." That conclusory, fact-free allegation does not sufficiently state an aiding and abetting claim.

The remaining aiding and abetting claims are necessarily futile in light of the rulings above.[7] Because the 2AC has failed to sufficiently plead a primary violation under the NJLAD, there can be no aiding and abetting liability. *See Taylor v. Lincare, Inc.*, No. CV 15-6284 (RMB/JS), 2016 WL 3849852, at *8 (D.N.J. July 15, 2016) ("[B]ecause Plaintiff's underlying causes of action fail, there can be no claim for aiding and abetting violation of the NJLAD.")

### iv.   Dismissals with prejudice

The remaining question is whether I should grant Dickerson leave to file a third amended complaint. The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chern. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Accordingly, if a complaint is vulnerable to Rule 12(b)(6) dismissal, courts "must permit a curative amendment, unless an amendment would be

---

[7]   I refer to Dickerson's aiding and abetting claims regarding the (1) failure to accommodate claim and (2) the harassment and retaliation claims stemming from Dickerson's alleged exclusion from Employment Team meetings.

16

inequitable or futile." *Alston v. Parker,* 363 F,3d 229, 235 (3d Cir. 2004) (emphasis added).

The claims found futile herein, based on the application of a Rule 12(b)(6) standard, are deemed dismissed. The dismissals have been entered, to a substantial extent, based on legal defects which, by their nature, would not be remedied by amendment. To the extent the dismissals rest on the failure to allege sufficient facts, I note that Ms. Dickerson has now had three opportunities to allege such facts as she may possess. A fourth opportunity, in the form of leave to submit another amended complaint, would be futile. The dismissals are therefore entered with prejudice.

### III.  Conclusion

For the reasons provided above, Plaintiff's motion to amend is **GRANTED** in part and **DENIED** in part. The motion to amend will be granted as to Dickerson's ADA and NJLAD harassment and retaliation claims against NJIT, and as to her NJLAD harassment and retaliation claims against Crawford. The motion to amend will be denied with respect to all other claims.

An appropriate Order, specifying the claims that will and will not go forward, accompanies this Opinion.

Dated: January 10, 2022

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**