**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLORIA DICKERSON,<br><br>                  Plaintiff,<br><br>v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY and ANNIE CRAWFORD,<br><br>                  Defendants. | Civil Action No. 19-8344 (SDW) (MAH)<br>Civil Action No. 24-10425 (SDW) (MAH)<br><br>**OPINION**<br><br>July 29, 2025 |
| GLORIA DICKERSON,<br><br>                  Plaintiff,<br><br>v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY BOARD OF TRUSTEES, DR. TIEIK C. LIM, HOLLY STERN, and MARISELA COTRINA,<br><br>                  Defendants. | |

**WIGENTON**, District Judge.

This opinion resolves three related motions pending in separate but overlapping cases brought by the same *pro se* plaintiff, Gloria Dickerson ("Ms. Dickerson" or "Plaintiff"). In the first case (No. 19-CV-8344, "Dickerson I"), the defendants moved for summary judgment. While that motion was pending, Plaintiff initiated a second action (No. 24-CV-10425, "Dickerson II"), asserting similar claims, but against different defendants. The defendants in the second case moved to dismiss the complaint. Because the two actions have the same plaintiff, arise from the

1

same core set of facts, and raise overlapping legal issues, this Court addresses all the motions in this opinion, which will be filed separately on both dockets with corresponding orders. Jurisdiction in each action is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue in each action is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED** in Dickerson I, Defendants' motion to dismiss is **GRANTED** in Dickerson II, and Defendants' motion for sanctions is **DENIED** in Dickerson II.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

The underlying facts in both cases stem from Plaintiff's employment at the New Jersey Institute of Technology ("NJIT"), where she was hired in 2015 as a customer service representative

---

[1] The facts cited in this section are drawn both from the Dickerson I Defendants' statements of undisputed facts and the complaint in Dickerson II. Plaintiff's opposition to summary judgment in Dickerson I did not comply with the requirements of Local Civil Rule 56.1. Accordingly, the facts contained in Defendants' statements are deemed undisputed for purposes of summary judgment. *See* L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.") Plaintiff has submitted several self-signed affidavits and a filing alleging that she was "denied permission to receive all of her University emails to support her claims." (Dickerson I, D.E. 189.) These affidavits are all conclusory and/or irrelevant to Plaintiff's claims, and are not competent evidence at this stage. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("It is true that 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'") (quoting *Blair v. Scott Specialty Glass*, 283 F.3d 595, 608 (3d Cir. 2002)). To the extent Plaintiff's submission can be construed to be requesting additional discovery, the Third Circuit has explained "that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139–40 (3d Cir. 1988). Plaintiff has not made such a showing and, in any event, this Court has reviewed Plaintiff's submissions and has considered them in the light most favorable to her.

In resolving the motion to dismiss filed in Dickerson II, the Court considers the allegations in the complaint, documents attached to or integral to the complaint, and matters of public record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). This Court also takes judicial notice of the filings and rulings in Dickerson I. Judicial notice is appropriate for such records when considering a Rule 12(b)(6) motion, particularly where, as here, Plaintiff's claims may depend on or reference events litigated in the earlier action. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559–60 (3d Cir. 2002).

in the Human Resources Department. (NJIT Statement of Undisputed Material Facts ("NJIT SOUMF")[2] ¶ 1, Dickerson I, D.E. 186-1.) During her tenure, Plaintiff was frequently absent from work on Family and Medical Leave Act ("FMLA") and other medical leave. (*Id.* ¶ 4.) In August 2018, during one such leave, she attended a colleague's retirement party and was observed dancing. (*Id.* ¶¶ 13–17.) Plaintiff remained out of work the following week. (*Id.* ¶¶ 18–22.) When she returned to work in September 2018, she was questioned by then–Vice President of Human Resources Annie Crawford ("Ms. Crawford") about her activities during leave, including a now well-documented and well-litigated comment: "How can you dance on FMLA?" (*Id.* ¶¶ 26–29.) According to Plaintiff, this remark and related events gave rise to harassment and retaliation.

Plaintiff continued to take leave throughout the duration of her employment, and remained employed at NJIT until July 2020. (*Id.* ¶¶ 40–42.) Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in November 2018 and, in March 2019, initiated Dickerson I against NJIT and several individuals. (Dickerson I, D.E. 1.) That lawsuit has been the subject of multiple motions to dismiss and amendments. This Court has previously dismissed with prejudice a wide range of claims, including those brought under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII, the New Jersey Law Against Discrimination ("NJLAD"), the Equal Pay Act, and other theories, as well as all claims against defendants other than NJIT and Ms. Crawford. What remains in Dickerson I are limited claims under the ADA and NJLAD for harassment and retaliation, arising solely from the September 2018 meeting and directed at NJIT and Ms. Crawford. Following

---

[2] Certain information contained in the NJIT SOUMF is subject to a sealing order. (Dickerson I, D.E. 199.) To avoid the need to seal this opinion, this Court has endeavored to only reference portions that are not under seal.

discovery, Defendants in Dickerson I moved for summary judgment on all claims. (Dickerson I, D.E. 186; 188.)

On November 7, 2024, while NJIT's motion for summary judgment was pending in Dickerson I, plaintiff filed Dickerson II, naming a new set of defendants: NJIT's Board of Trustees, Dr. Teik C. Lim, General Counsel Holly Stern, and HR professional Marisela Cotrina. The complaint in Dickerson II alleges that Plaintiff was "treated like a slave" and subjected to "harassment, emotional stress, denial of promotions, age discrimination, and a host of discriminatory behaviors." (Dickerson II, D.E. 1.) The complaint does not identify any specific new acts or events apart from those already addressed in Dickerson I, and it includes factual references to individuals who were previously named in the first lawsuit, including some whose claims were dismissed with prejudice. The defendants in Dickerson II moved to dismiss under Rule 12(b) on multiple grounds, including insufficient service of process, res judicata, collateral estoppel, and the statute of limitations.

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

### B. Motion to Dismiss

Defendants in Dickerson II move to dismiss on several grounds – insufficient service of process, res judicata and collateral estoppel, statute of limitations, and failure to state a claim – and

5

move for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11. This Court will address the various legal standards in the "Discussion" section below.

### III. DISCUSSION

#### A. Dickerson I

##### a. ADA and NJLAD Harassment

To prevail on a harassment claim under the ADA or the NJLAD, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) it was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999); *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010) ("NJLAD claims generally are governed by the same standards [as the ADA].")

For purposes of this motion, the Court assumes and Defendants do not dispute that Plaintiff is a qualified individual with a disability and that Ms. Crawford's alleged question — "how can you dance on FMLA?" — was asked at the September 2018 meeting. Even accepting Plaintiff's version of events as true, the record fails to show that this single incident constituted harassment based on disability, let alone that it was sufficiently severe or pervasive to sustain a hostile work environment claim under either statute. Courts have consistently held that isolated comments about attendance or FMLA leave, even when insensitive, do not constitute actionable harassment under the ADA or NJLAD. *See Barclay v. Amtrak*, 240 F. App'x 505, 509 (3d Cir. 2007) ("[W]e have rejected a theory of harassment so broad as to dictate that any time a supervisor harasses an employee for absences the employee claims are due to a disability, that harassment is *based* on the

employee's disability under the ADA.") (emphasis in original); *Vanhook v. Cooper Health Sys.*, Civ. No. 19-14864, 2021 WL 2186989, at *8–9 (D.N.J. May 28, 2021) (granting summary judgment where supervisor inquired as to whether plaintiff would use FMLA leave for particular days); *Torres v. Cnty. of Berks*, Civ. No. 17-1890, 2018 WL 564406, at *11 (E.D. Pa. Jan. 26, 2018) (comments such as "oh, you're here today" and "wow, you actually work here" did not support disability harassment claim); *Velcko v. Saker Shoprites, Inc.*, Civ. No. 15-1217, 2016 WL 4728106, at *6 (D.N.J. Sep. 9, 2016) (work environment not hostile where the plaintiff was allegedly "ridiculed because of his health condition," coworkers bet on when he would return to work, a supervisor commented that plaintiff was "always ... sick" and "asked how long would he be out this time," and a different supervisor "repeatedly called him 'Family Leave Larry' in front [of] other employees"). Moreover, there is no evidence that the comment at issue reflected animus toward Plaintiff's disability. On the contrary, the record shows that Ms. Crawford raised the issue to clarify the nature of Plaintiff's condition in light of recent absences, and that Plaintiff's job responsibilities, compensation, and access to leave remained unchanged for nearly two years afterward. Finally, even if the comment could be considered harassment, it was not nearly severe or pervasive enough to alter the terms or conditions of plaintiff's employment. The Third Circuit has emphasized that isolated comments such as this rarely suffice to sustain a hostile work environment claim. *See Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017); *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 606–07 (N.J. 1993) (noting that only "rare and extreme" single incidents satisfy the standard). The isolated nature and relatively innocuous context of the question at issue here fall far short of establishing such a claim.

To the extent Plaintiff relies on the outcome of the Department of Labor ("DOL") investigation report that was attached to the Second Amended Complaint (the "DOL Report"),[3] such reliance is misplaced. The DOL Report indicates that, after investigation, a discrimination violation was found with respect to 29 C.F.R. § 825.220. (D.E. 186-2, Ex. 28.) While potentially admissible and possibly tangentially related to the matters at hand, this Court finds that this conclusory paragraph in the DOL Report with respect to discrimination does not supplant the above analysis as to whether Ms. Crawford's question constitutes harassment, nor whether the question was sufficiently severe or pervasive to make out a harassment claim under the ADA or NJLAD.

Accordingly, summary judgment in Defendants' favor is warranted on Plaintiff's ADA and NJLAD harassment claims in Dickerson I.

### b. ADA and NJLAD Retaliation

To establish retaliation under the ADA or NJLAD, a plaintiff must show (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the two. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 70 (3d Cir. 1996) (explaining that the NJLAD and ADA have been held to be governed by the same standards).

Defendants concede that Plaintiff's use of FMLA leave in these circumstances constitutes protected activity. This Court makes no findings on that issue, but the summary judgment record contains no evidence of any adverse employment action taken against her in response. Plaintiff remained employed at NJIT for nearly two years following the September 2018 meeting, received no formal discipline or warnings, experienced no change in her role or compensation, and

---

[3] While the DOL Report does not have a date, it appears that Plaintiff was notified of its outcome on January 28, 2019.

8

continued to access FMLA and other leave without interference. Adverse employment actions typically involve tangible changes such as termination, demotion, suspension, or significant changes in responsibilities. *See Whitehead v. County of Monmouth*, No. 15-5352, 2015 WL 7776896, at *2 (D.N.J. Dec. 2, 2015) ("An adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction.") (citation omitted). Here, Ms. Crawford's question did not result in any such action, nor is there any evidence of coercion, threats, or interference with Plaintiff's exercise of her rights.

Because Plaintiff cannot establish that she suffered any adverse employment action, she cannot sustain a retaliation claim under the ADA or NJLAD. Summary judgment is therefore appropriate.

### c. Claims Against Ms. Crawford

Finally, to the extent any ambiguity remains regarding the scope of the claims asserted against Ms. Crawford, it is well established that individual liability under the NJLAD requires a showing of a principal violation by the employer. Where no actionable discrimination or retaliation by the employer is found, claims against individual employees must also fail. *See Taylor v. Lincare, Inc.*, Civ. No. 15-6284, 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) ("Therefore, because Plaintiff's underlying causes of action fail, there can be no claim for aiding and abetting in violation of the NJLAD.") (internal quotation marks omitted). Because Plaintiff's claims against NJIT in Dickerson I fail as a matter of law, summary judgment must also be granted in favor of Ms. Crawford on any individual liability theory under the NJLAD.

### B. Dickerson II

#### a. Motion to Dismiss

At the outset, this Court notes that Plaintiff did not file an opposition to either the motion to dismiss or the motion for sanctions in Dickerson II. On February 19, 2025, Plaintiff submitted a letter requesting an extension of time to respond, but she did not indicate how much additional time she sought, and she has not followed up or filed any further submission since then. (Dickerson II, D.E. 14.) This Court has afforded Plaintiff more than sufficient time to respond and has considered the motions on the full record, including the prior proceedings in this Court and in New Jersey Superior Court. Based on that record, this Court concludes that any opposition Plaintiff might have submitted would not have changed the outcome. The arguments in favor of dismissal rest on procedural and substantive bars that are clear from the face of the complaint and the publicly available history of Plaintiff's litigation and, because this Court will not award sanctions at this time, Plaintiff has not been unduly prejudiced by her lack of opposition.

##### i. Insufficient Service of Process

The Dickerson II Defendants first move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(5). To effect proper service of process, a plaintiff must comply with Rule 4 of the Federal Rules of Civil Procedure. When the defendant is an entity such as a private school, Rule 4(h)(1) governs and permits service by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service. *See* Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4(h)(1)(A) allows service in accordance with the law of the state where the district court is located or where service is made. Under New Jersey Court Rule 4:4-4(a)(5), service on a private entity such as an unincorporated association must be made on "an officer or managing agent." N.J. Ct. R. 4:4-4(a)(5).

Here, the returns of service indicate that copies of the summons and complaint were delivered to an individual identified only by last name and described as the "custodian of records." (Dickerson II, D.E. 4.) There is no indication that this individual was a trustee, officer, or authorized agent of the Board of Trustees, nor is there any suggestion that the individual was authorized to accept service on behalf of the named individual defendants in Dickerson II. Accordingly, service was insufficient as to both the Board of Trustees and the individual defendants under both Federal Rule of Civil Procedure 4 and New Jersey Court Rules 4:4-4(a)(1) and (a)(5).

While dismissal would be warranted on insufficient service grounds, this Court will address the remaining grounds for dismissal in the interest of judicial efficiency, clarity, and finality for all parties.

### ii. Res Judicata and Collateral Estoppel

Defendants move to dismiss the Dickerson II complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. These doctrines play a central role in ensuring the integrity and efficiency of the judicial process. The doctrine of res judicata, or claim preclusion, promotes finality, prevents inconsistent judgments, and protects litigants from the burden of defending repeated lawsuits arising from the same operative facts. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984); *see also Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (3d Cir. 1950) ("The theory [of res judicata] is that parties should not have to litigate issues which they have already litigated or had a reasonable opportunity to litigate."), *cert. denied*, 341 U.S. 921 (1951). These principles apply with equal force to *pro se* litigants such as Plaintiff. *See King v. E. Lampeter Twp.*, 69 F. App'x 94, 96 (3d Cir. 2003)

11

(affirming district court's sua sponte dismissal of a pro se plaintiff's complaint on res judicata and collateral estoppel grounds).

Res judicata bars a claim when the following factors are present: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (citation omitted). As Defendants note, the Honorable Kevin J. McNulty (Ret.) previously dismissed claims in Dickerson I for race and age discrimination and violations of the Equal Pay Act against NJIT and individual defendants, including Ms. Crawford, and denied leave to file a proposed Second Amended Complaint on the grounds that such amendments were clearly futile. (Dickerson I, D.E. 54.) These dismissals with prejudice "operate[] as an adjudication on the merits" for purposes of the instant res judicata analysis. *Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992). The second requirement of identity or privity of the parties is also satisfied. Although the defendants named in Dickerson II may somewhat differ from those in Dickerson I, the changes are immaterial for purposes of res judicata. The Board of Trustees of NJIT is legally and functionally aligned with NJIT, which was named in Dickerson I. Courts have recognized that closely related defendants, such as a board and the entity it governs, are in privity for preclusion purposes. *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) (entities with a "close or significant relationship" are in privity, and noting that "a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action") (citations omitted). The same holds true for the newly named individual defendants, whose alleged actions arose solely from their employment at or authority within NJIT. Indeed, the fact that Plaintiff chose to name overlapping institutional actors and similarly situated employees, while omitting previously named parties, strongly suggests an

12

attempt to circumvent the preclusive effect of prior rulings. But res judicata cannot be avoided by simply identifying additional related defendants. *See Ouaziz v. Murphy*, Civ. No. 23-2696, 2024 WL 397708, at *5 (D.N.J. Feb. 2, 2024) (finding that res judicata extends to new defendants where a plaintiff "'assert[s] essentially the same claim against different defendants'") (quoting *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950)). While the complaint in Dickerson II is bereft of specific allegations, it is clear to this Court that both actions concern the same transactional nucleus: Plaintiff's employment at NJIT and her complaints of mistreatment. That is sufficient to meet the third requirement.

Not to be deterred after Judge McNulty dismissed those several claims with prejudice, Plaintiff proceeded to file an action in New Jersey Superior Court, the existence of which further reinforces this Court's conclusion that Dickerson II is an impermissible attempt to relitigate claims already decided. In that case, Plaintiff again sued NJIT and individuals affiliated with the institution based on the same alleged conduct. The state court dismissed that complaint on preclusion grounds, and in doing so, specifically engaged Plaintiff concerning the duplicative nature of her claims and the effect of Dickerson I. (Dickerson II, D.E. 10-2, Ex. D, at 26:17-27:11.) This exchange underscores that, despite proceeding *pro se*, Plaintiff was made aware by both this Court and the state court of the prior adjudications and the legal principles that bar repeated litigation of the same events. The state court's consistent treatment of Plaintiff's claims confirms the soundness of this Court's application of res judicata.

Although the doctrines of res judicata and collateral estoppel are distinct — res judicata bars re-litigation of the same claims, while collateral estoppel bars re-litigation of specific issues actually litigated and essential to a prior judgment — only res judicata is necessary to dispose of the overlapping claims here. Because the dismissed claims in Dickerson I resulted in a final

judgment on the merits involving the same core set of facts and legally related parties, and Plaintiff had a full opportunity to litigate those claims, Dickerson II is barred in its entirety under the broader doctrine of claim preclusion. As such, this Court need not reach the narrower application of collateral estoppel.

### iii. Statute of Limitations and Failure to State a Claim

Having found that Dickerson II is clearly barred by the doctrine of res judicata, this Court will only briefly address the remaining bases.

Even if preclusion did not apply, the complaint in Dickerson II is plainly deficient on its face. It consists of a single paragraph of vague and conclusory assertions, devoid of any supporting facts, legal theory, or specific conduct attributed to the named defendants. The complaint does not allege what actions the Board of Trustees or any individual defendant purportedly took, when those actions occurred, or how they violated any specific statute or legal right. This lack of detail is insufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 and warrants dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, any potential claim raised in Dickerson II would be time-barred under both federal and state law. Plaintiff was terminated from her position at NJIT in July 2020. To the extent she seeks relief under Title VII, the ADA, or the ADEA, such claims were subject to a 90-day filing window following receipt of a right-to-sue letter. Plaintiff did not file Dickerson II until November 2024, and does not attach the right-to-sue letter that she claims she received on August 8, 2024. Likewise, claims brought under the NJLAD and any related tort claims are governed by a two-year statute of limitations under New Jersey law, which would have expired well before

Dickerson II was filed. *See Montells v. Haynes*, 133 N.J. 282, 286 (1993); N.J. Stat. Ann. § 2A:14-2. Nothing in the Dickerson II complaint plausibly suggests a continuing violation, equitable tolling, or any other basis to extend these deadlines.

Accordingly, even if this action were not barred by res judicata or claim-splitting, it would still warrant dismissal on these independent grounds. Given the conclusory nature of the allegations, the lack of any new or timely asserted facts, and Plaintiff's repeated attempts to litigate the same issues across multiple forums, this Court finds that amendment would be futile. The claims in Dickerson II are therefore dismissed with prejudice.

### b. Motion for Sanctions

Defendants in Dickerson II have moved for sanctions under Federal Rule of Civil Procedure 11 in light of Plaintiff's initiation of a second lawsuit involving substantially the same parties, facts, and legal claims that have already been the subject of prior rulings in this Court and in New Jersey Superior Court. Rule 11 provides that by presenting a pleading to the court, a party certifies that to the best of their knowledge, information, and belief, formed after reasonable inquiry, the pleading is not being presented for any improper purpose, the claims are warranted by existing law or a nonfrivolous argument for its extension, and the factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b). Sanctions under Rule 11 are intended to deter abusive litigation and promote judicial efficiency, but they are discretionary and must be applied with care, especially where the litigant is proceeding *pro se*. The Third Circuit has emphasized that sanctions are to be applied only in the exceptional circumstance "where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988) (citation omitted). While *pro se* litigants are not exempt from Rule 11, a court "may take a party's *pro se* status into account when considering Rule 11 sanctions."

15

*Asanov v. Davidson*, Civ. No. 06-611, 2007 WL 1140632, at *6 (M.D. Pa. Apr. 17, 2007); *but see Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) ("[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets").

Here, the claims in Dickerson II are largely duplicative of claims already raised and, in many instances, dismissed with prejudice in both this Court and the New Jersey Superior Court. The factual allegations arise from the same employment relationship at the New Jersey Institute of Technology, and Plaintiff has already been afforded multiple opportunities to litigate those claims. Filing a lawsuit without a legitimate basis wastes both judicial and party resources, and, under normal circumstances, likely would result in the imposition of sanctions. Nevertheless, in light of Plaintiff's *pro se* status and the possibility that she may not have fully appreciated the legal consequences of filing Dickerson II, this Court will exercise its discretion to deny the request for Rule 11 sanctions. *See McCarthy v. Minnesota Laws. Mut. Ins. Co.*, Civ. No. 23-450, 2023 WL 4636889, at *4 (M.D. Pa. July 19, 2023) ("[C]aselaw construing Rule 11 sanctions is marked by a single overarching principle; namely, when in doubt, one should decline to sanction parties.")

However, Plaintiff is now on clear notice that these claims have been *fully and finally adjudicated* repeatedly and in multiple forums, and that any future attempt to reassert the same or substantially similar claims against these or related defendants may result in the imposition of sanctions, including monetary penalties or a filing injunction. *See* Fed. R. Civ. P. 11(c); *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (affirming district court's authority to limit filings by a pro se litigant after fair warning and an opportunity to be heard). Simply put, while this Court is willing to give Plaintiff the benefit of the doubt this time, it will not permit ongoing misuse of the judicial process, particularly when such misuse blatantly disregards the finality of prior rulings.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** in Dickerson I, Defendants' motion to dismiss is **GRANTED** in Dickerson II, and Defendants' motion for sanctions is **DENIED** in Dickerson II.   Appropriate orders will follow in both actions.


                                                               */s/ Susan D. Wigenton*
                                                             **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Michael A. Hammer, U.S.M.J.
         Parties